### STATE

v.

### Thomas MARTINI.

No. 2003–387–C.A.

Supreme Court of Rhode Island.

Nov. 26, 2004.

Lauren Sandler Zurier, Providence, for Plaintiff.

Catherine A. Gibran, Providence, for Defendant.

Present: WILLIAMS, C.J., GOLDBERG, FLAHERTY, SUTTELL, and ROBINSON, JJ.

## OPINION

GOLDBERG, Justice.

This case came before the Supreme Court on September 28, 2004, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. After hearing the arguments of counsel and reviewing the memoranda submitted by the parties, we are satisfied that cause has not been shown. Accordingly, we shall decide the issues raised on appeal at this time.

### Facts and Travel

On December 3, 2002, by criminal information filed in Kent County Superior Court, the defendant, Thomas Martini (defendant), was charged with disorderly conduct in violation of G.L.1956 § 11–45–1, G.L.1956 § 12–29–5, and § 12–29–2. The information alleged that on October 8, 2002, after having been refused entry to the apartment he and his girlfriend shared, defendant repeatedly kicked and punched a door and then entered their apartment through a basement window.[1] Pursuant to the enhanced sentencing provisions of the Domestic Violence Prevention Act (DVPA), § 12–29–5, defendant, having been previously convicted of two qualifying domestic violence offenses, was charged with a felony crime of domestic violence. It is undisputed that defendant previously had been convicted of two domestic violence offenses that are prerequisites for receiving the sentencing enhancements under § 12–29–5(c).[2]

On January 21, 2003, defendant moved to dismiss the criminal information pursuant to Rule 9.1 of the Superior Court Rules of Criminal Procedure. Relevant to this appeal, defendant argued that, pursuant to G.L.1956 § 11–1–2, disorderly conduct is classified as a petty misdemeanor and, by its terms, § 12–29–5(c) provides for enhanced penalties for anyone "convicted of an offense punishable as a misdemeanor." Consequently, defendant argued that a violation of § 11–45–1(a) is exempt from the sentencing enhancements of § 12–29–5. The Superior Court trial justice agreed, and on March 19, 2004, she granted defendant's motion to dismiss and subsequently denied the state's motion for

---

1. The criminal information alleged that defendant: "intentionally, knowingly, or recklessly engage[d] in fighting, threatening, violent or tumultuous behavior and was previously convicted of felony domestic assault on December 1, 1999, and domestic assault on March 5, 1998, in violation of § 11–45–1(a), § 12–29–2, and § 12–29–5 of the General Laws of Rhode Island, 1956, as amended (Reenactment of 2000)."

2. On March 5, 1998, defendant pled *nolo contendere* to simple domestic assault and received ten months to serve and eight months suspended sentence. On December 1, 1999, defendant pled *nolo contendere* to felony assault and received a five-year sentence, with one year to serve and four years suspended sentence.

reconsideration. The state timely appealed. We affirm.

### Issues Presented

■ On appeal, the state asserts that a disorderly conduct conviction under § 11–45–1 is subject to the sentencing enhancements provided in § 12–29–5(c). The state argues that § 12–29–2(a), provides that disorderly conduct "when committed by one family or household member against another" qualifies as a domestic violence offense and, for purposes of the DVPA, is a misdemeanor subject to the enhanced sentencing provisions of § 12–29–5(c). The state contends that by cross-referencing the penalty provisions of the DVPA, the Legislature intended to subject petty misdemeanors to the enhanced sentencing provisions in § 12–29–5(c). In addition, the state suggests that defendant's construction of § 12–29–2 and § 12–29–5 should be rejected under basic principles of statutory construction because it would be inconsistent with the Legislature's intent to prevent domestic violence and punish repeat offenders. Lastly, the state argues that defendant's position produces an absurd result by allowing offenders to escape the enhanced sentencing provisions of § 12–29–2(c) without regard to the number of convictions of disorderly conduct under § 11–45–1.

### Discussion

■ "When addressing a motion to dismiss a criminal information, a [Superior Court] justice is required to examine the information and any attached exhibits to determine whether the state has satisfied its burden to establish probable cause to believe that the offense charged was committed and that the defendant committed it." *State v. Fritz*, 801 A.2d 679, 682 (R.I. 2002) (citing *State v. Aponte*, 649 A.2d 219, 222 (R.I.1994) and G.L.1956 § 12–12–1.7; Super.R.Crim.P. 9.1). We review a trial justice's "decision to grant a criminal defendant's motion to dismiss by examining whether the justice's findings are supported by the evidence or whether, in making those findings, the justice misconceived or overlooked material evidence." *Id.* at 683. Moreover, in a case that presents a question of law, we review "issues of statutory interpretation *de novo*." *Machado v. State*, 839 A.2d 509, 512 (R.I.2003).

■ " 'It is well settled that when the language of a statute is clear and unambiguous, this Court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings.' " *State v. DiCicco*, 707 A.2d 251, 253 (R.I.1998). Moreover, and significantly, in *State v. Carter*, 827 A.2d 636, 643–44 (R.I. 2003), we held that the language of a penal statute must be read narrowly, that penal statutes must be strictly construed in favor of the defendant, and that the penal statute " 'must contain a description or definition of the act or conduct which comprises the offense contemplated therein stated with legal certainty.' " [3]

A conviction for disorderly conduct under § 11–45–1(a), subjects the offender to the penalties enumerated in § 11–45–1(c): "[a]ny person found guilty of the crime of disorderly conduct shall be imprisoned for a term of not more than six (6) months, or

---

**3.** In *State v. Carter*, 827 A.2d 636, 637 (R.I. 2003), the defendant was convicted of violating a domestic abuse protective order after having twice been convicted of a crime of domestic violence. This Court vacated the conviction because the defendant's second offense, violating a District Court no-contact order, was not an enumerated domestic violence crime qualifying as a second offense, pursuant to the provisions of G.L.1956 § 12–29–2. *Carter*, 827 A.2d at 644–45. Therefore, the offense for which the defendant stood convicted did not rise to the level of a felony. *Id.* at 644.

fined not more than five hundred dollars ($500), or both."

Under our law, the crime of disorderly conduct is a petty misdemeanor. Section 11–1–2 sets forth four distinct categories of criminal offenses based upon the potential punishment imposed upon the offender if convicted:

"**Felony, misdemeanor—Petty misdemeanor, and violation distinguished.**—*Unless otherwise provided,* any criminal offense which at any given time may be punished by imprisonment for a term of more than one year, or by a fine of more than one thousand dollars ($1,000), is declared to be a felony; any criminal offense which may be punishable by imprisonment for a term not exceeding one year, or by a fine of not more than one thousand dollars ($1,000), or both, is declared to be a misdemeanor; *any criminal offense which may be punishable by imprisonment for a term not exceeding six (6) months or by a fine of not more than five hundred dollars ($500), or both, is declared to be a petty misdemeanor;* and any offense which may be punished by only a fine of not more than five hundred dollars ($500) is declared to be a violation." (Emphases added.)

Accordingly, the penalty provisions set forth in § 11–45–1 classify disorderly conduct as a "petty misdemeanor," and not as a misdemeanor crime.

We note, however, that § 11–45–1(d) cross-references the DVPA by providing, "[w]here the provisions of 'The Domestic Violence Prevention Act,' chapter 29 of title 12, are applicable, the penalties for violation of this section shall also include the penalties as provided in § 12–29–5." In addition to the penalties set forth in § 11–45–1, a defendant convicted of disorderly conduct against a family or household member is also subject to the following:

"**Disposition of domestic violence cases.**—(a) *Every person convicted of or placed on probation for a crime involving domestic violence* or whose case is filed pursuant to § 12–10–12 where the defendant pleads nolo contendere, *in addition to any other sentence imposed or counseling ordered,* shall be ordered by the judge to attend, at his or her own expense, a batterer's intervention program appropriate to address his or her violent behavior. This order shall be included in the conditions of probation. Failure of the defendant to comply with the order shall be a basis for violating probation and/or the provisions of § 12–10–12. This provision shall not be suspended or waived by the court.

(b) *Every person convicted of or placed on probation for a crime involving domestic violence,* as enumerated in § 12–29–2 or whose case if filed pursuant to § 12–10–12 where the defendant pleads guilty or nolo contendere, *in addition to other court costs or assessments imposed,* shall be ordered to pay a twenty-five dollar ($25.00) assessment. All moneys collected pursuant to this section shall be deposited as general revenue." Section 12–29–5. (Emphases added.)

Thus, "every person convicted of or placed on probation for a crime involving domestic violence" as defined in § 12–29–2, in addition to the penalties for the underlying offense, is subject to the mandatory penalty provisions of § 12–29–5(a) and § 12–29–5(b).[4] In contrast, § 12–29–5(c)(1) does

---

**4.** Section 12–29–2(a) of the DVPA provides: " 'Domestic violence' includes, but is not limited to, any of the following crimes when committed by one family or household member against another: (1) Simple assault (§ 11–5–3); (2) Felony assaults (§§ 11–5–1, 11–5–2,

not encompass "[e]very person convicted of or placed on probation for a crime involving domestic violence," but is limited to persons "convicted of an offense punishable as a misdemeanor involving domestic violence as defined in § 12–29–2."[5] By its terms, § 12–29–5(c)(1) excludes from its provisions offenses that are not punishable as a misdemeanor. When read narrowly, as we are constrained to do, the language of § 12–29–5(c) is a clear recognition by the Legislature that not all of the domestic violence offenses enumerated in § 12–29–2 are misdemeanors. We are satisfied that § 12–29–5(c)(1) does not serve to reclassify disorderly conduct as a misdemeanor for the purposes of the DVPA.

We note that one fundamental difference between disorderly conduct and the other crimes enumerated in § 12–29–2 is that disorderly conduct is not necessarily a crime against a person. For example, under § 11–45–1, a person may commit an act of disorderly conduct by merely engaging in "tumultuous behavior" and there may not necessarily be a complainant for a violation of this statute or a police officer may serve as a complainant for a violation of this statute. With the exception of trespass, the other crimes enumerated in § 12–29–2 by definition are crimes of violence committed against another person: simple assault, felony assault, vandalism, kidnapping, child-snatching, sexual assault,

homicide, violation of a protective order, or stalking. We note that defendant was charged with disorderly conduct for engaging in "fighting, threatening, violence, or tumultuous behavior" for punching and kicking the door to his own residence.

Furthermore, disorderly conduct is distinct from the other crimes enumerated in § 12–29–2 by its particularly amorphous nature, which has caused Legislatures and courts to struggle to formulate a constitutionally appropriate disorderly conduct statute that is not subject to a vagueness or overbreadth challenge. *See State v. Berker,* 114 R.I. 72, 74, 328 A.2d 729, 730 (1974); *Vagueness as Invalidating Statutes or Ordinances Dealing with Disorderly Persons or Conduct,* 12 A.L.R.3d 1448 (1967 Supp.2004). Mindful of these distinctions, we cannot agree with the dissent's approach to these crimes.

We are not persuaded by the state's argument that the phrase a "misdemeanor involving domestic violence as defined in 12–29–2," as used in § 12–29–5(c)(1), is a "term of art whose scope is defined by 12–29–2." The classification of criminal offenses set forth in § 11–1–2 is controlling unless the Legislature specifically sets forth a different classification for a particular offense. We will not determine this by implication as the state suggests. We

and 11–5–4); * * *; (4) Disorderly conduct (§ 11–45–1)."

5. Section 12–29–5(c)(d) provides:
   (c)(1) *Every person convicted of an offense punishable as a misdemeanor involving domestic violence as defined in § 12–29–2* shall:
   (i) For a second violation be imprisoned for a term of not less than ten (10) days and not more than one year.
   (ii) For a third and subsequent violation be deemed guilty of a felony and be imprisoned for a term of not less than one year and not more than ten (10) years.

(2) No jail sentence provided for under this section can be suspended.
(3) Nothing in this subsection shall be construed as limiting the discretion of the judges to impose additional sanctions authorized in sentencing.
(d) For the purposes of this section, 'batterers intervention program' means a program which is certified by the batterers intervention program standards oversight committee according to minimum standards, pursuant to §§ 12–29–5.1, 12–29–5.2, and 12–29–5.3." (Emphasis added.)

reject the state's argument that the "[L]egislature clearly intended to signal that even petty misdemeanors were subject to the enhancement provisions of § 12–29–5(c)" by amending the disorderly conduct statute in 1998 to link it with the penalties provided in § 12–29–5. The Legislature's decision to include the penalties set forth in § 12–29–5 for disorderly conduct committed against a family member is logically consistent with our holding, because a defendant who commits a petty misdemeanor crime of domestic violence is nonetheless subject to the penalties provided under § 12–29–5(a) and § 12–29–5(b). Although a defendant accused of disorderly conduct against a family member is not subject to the enhanced sentencing provisions provided by § 12–29–5(c), the penalties provided by § 12–29–5(a) and § 12–29–5(b) still apply. Our holding is in harmony with a legislative intent to prevent recidivism by domestic violence offenders by requiring counseling, even though the offender is not simultaneously subjected to the rather draconian threat of a felony prosecution with up to ten years imprisonment in situations in which the third domestic violence offense is punishable as a petty misdemeanor.

For the reasons stated herein, we affirm the judgment of the Superior Court. The record shall be remanded to the Superior Court.

WILLIAMS, Chief Justice, with whom Justice FLAHERTY joins, dissenting.

We respectfully dissent from the holding in this case. We read the enhanced sentencing provisions of the Domestic Violence Prevention Act (DVPA) as applying to all misdemeanors, including petty misdemeanors. Thus, we would have remanded this case so defendant could be sentenced as a felon pursuant to G.L.1956 § 12–29–5.

General Laws 1956 § 11–45–1(c) (disorderly conduct statute) requires that "[a]ny person found guilty of the crime of disorderly conduct shall be imprisoned for a term of not more than six (6) months, or fined not more than five hundred dollars ($500), or both." Under G.L.1956 § 11–1–2, petty misdemeanors are those offenses "punishable by imprisonment for a term not exceeding six (6) months or by a fine of not more than five hundred dollars ($500), or both * * *." When reading these provisions alone, there is no question that disorderly conduct is punishable as a petty misdemeanor. However, such a simplistic analysis belies the General Assembly's legislative intent.

It is well-established that when this Court interprets a statute, "our ultimate goal is to give effect to the General Assembly's intent. * * * The best evidence of such intent can be found in the plain language used in the statute." *State v. Grayhurst*, 852 A.2d 491, 516 (R.I.2004) (quoting *Martone v. Johnston School Committee*, 824 A.2d 426, 431 (R.I.2003)). If the statute is unclear or ambiguous, however, we will "glean the intent and purpose of the Legislature 'from a consideration of the entire statute, keeping in mind [the] nature, object, language and arrangement' of the provisions to be construed." *Stebbins v. Wells*, 818 A.2d 711, 715 (R.I.2003) (quoting *Mottola v. Cirello*, 789 A.2d 421, 423 (R.I.2002)).

In *State v. Carter*, 827 A.2d 636, 643 (R.I.2003), we held that the DVPA is penal in nature. Under the rule of lenity, we acknowledge that if two constructions of a penal statute are possible, then the analysis must resolve in favor of the defendant. *State v. Smith*, 766 A.2d 913, 924 (R.I. 2001).

In this case, however, § 12–29–2(a) (DVPA definitions provision) unambiguously includes disorderly conduct as a

crime of domestic violence if it involves "one family or household member against another." *See Carter*, 827 A.2d at 644. Section 11–45–1(d) of the disorderly conduct statute states that "[w]here the provisions of 'The Domestic Violence Prevention Act,' * * * are applicable, the penalties for violation of this section shall also include the penalties as provided in § 12–29–5." Section 12–29–5(c)[6] (enhanced sentencing provision) requires that "[e]very person convicted of an offense punishable as a misdemeanor involving domestic violence as defined in [the DPVA definition provision] shall * * * [f]or a third and subsequent violation be deemed guilty of a felony * * *." There is no question that defendant has been convicted of three domestic crimes; the only issue goes to the classification of those crimes.

The majority holds that because disorderly conduct is a petty misdemeanor and not a misdemeanor, a conviction of disorderly conduct as a third domestic offense under the DVPA will not trigger the enhanced sentencing provision. Under *Carter*, 827 A.2d at 642, this Court held that a crime would count as a qualifying offense under the enhanced sentencing provision only if it was enumerated in the DVPA definition provision, which includes disorderly conduct among a list of ten other crimes. But reading the majority opinion in conjunction with *Carter*, the crime of disorderly conduct would be excluded from the DVPA definition provision. This is an illogical result that guts the meaning of the DVPA. Clearly, in enacting the DVPA, the General Assembly intended that all misdemeanors (including petty misdemeanors) and felonies listed in the DVPA definition

provision apply so that if a defendant is convicted of any three crimes listed in the DVPA definition provision, then the third conviction will be considered a felony regardless of the classification of the underlying crime.

The disorderly conduct statute is consistent with the purpose of the DVPA, which "is to recognize the importance of domestic violence as a serious crime against society and to assure victims of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide." Section 12–29–1. Reading the disorderly conduct statute in concert with the DVPA leaves us with no doubt about the General Assembly's intent. Because there is only one possible interpretation, the rule of lenity has no application.

The enhanced sentencing provision is aimed directly at the recidivist, and treats offenders harshly to deter future bad behavior. To conclude that domestic disorderly conduct fails to invoke the guidelines set forth in the enhanced sentencing provision ignores the potential harm to domestic violence victims—the very people the statute is intended to protect. Under the majority's ruling, a defendant who repeatedly commits the crime of domestic disorderly conduct will continue to pay fines and attend batterer's intervention courses, but will never be sentenced to more time in prison. Although criminal or penal statutes must be strictly construed, such a construction should not ignore the plain language, intent and meaning of the statute.

The majority's opinion puts too much weight on one word: petty Black's Law Dictionary defines "petty" as "[r]elatively insignificant or minor." Black's Law Dic-

---

**6.** General Laws 1956 § 12–29–5(a)–(b) requires that anyone convicted of a domestic offense attend a batterer's intervention course and pay $25 in addition to the sentence imposed for the underlying offense. The majority agrees that § 12–29–5(a)–(b) applies to the crime of disorderly conduct.

tionary 1166 (7th ed. 1999). Accordingly, a *petty* misdemeanor is a misdemeanor that qualifies for *less* jail time or *lower* fines relative to other misdemeanors, but it is still a misdemeanor. The word "petty" simply qualifies "misdemeanor," and therefore is rightly included in the enhanced sentencing provision. Although domestic disorderly conduct is classified as a petty misdemeanor, the Legislature explicitly recognized that in certain situations the crime would require a heftier sentence, specifically a sentence prescribed for felonious conduct. *See* § 11–45–1(d). This understanding is not inconsistent with § 11–1–2, which distinguishes between felonies, misdemeanors, petty misdemeanors and violations. Significantly, § 11–1–2 states that "[u]nless otherwise provided" the four classifications of crimes based on sentences would govern. The DVPA definition provision expressly "otherwise provide[s]" that disorderly conduct, as defined by the disorderly conduct provision, is within the DVPA and will be treated as a felony if the offender has already been twice convicted for misdemeanors or felonies set forth in the DVPA definitions provision.

For the foregoing reasons, we would reverse the decision of the Superior Court.