DECISION
Before this Court is Defendant Wayne Morris' ("Defendant") motion pursuant to Rule 9.1 of the Rules of Criminal Procedure for the Superior Court of Rhode Island ("Rule 9.1")[1] seeking to dismiss Count I of the Criminal Information for failure to register as a sex offender in violation of G.L. 1956 §§ 11-37.1-3 and 11-37.1-4. Defendant maintains that the Criminal Information fails to demonstrate the existence of probable cause to believe that the offense charged has been committed or that the Defendant committed it. For the reasons set forth below, this Court denies Defendant's Rule 9.1 motion to dismiss.
 FACTS AND TRAVEL
After a review of the facts proffered and consideration of the arguments presented in memoranda and oral argument, this Court makes the following findings of fact. On May 11, 2009, Defendant was detained for a narcotics violation at the Kennedy Plaza *Page 2 
police substation located in Providence, Rhode Island. A preliminary inquiry by the Providence Police Department indicated that Defendant was a registered sex offender in Massachusetts, but not in Rhode Island. Consequently, the matter was assigned to an investigator, who confirmed Defendant as a registered Level II sex offender in Massachusetts based on information provided by both the National Crime Information Center and the Massachusetts Sex Offender Registry Board (the "Board"). The Board informed the investigator that Defendant's sex offender status carried a lifetime registration requirement, and that Defendant was not in compliance with his registration obligations in Massachusetts. The investigator also confirmed Defendant had been residing at a Providence residential address since at least July of 2008, and was not registered as a sex offender in Providence.
Subsequent to the arrest, the Providence Police Department obtained from the Board a "Registration/Change of Address/Annual Registration" form listing Defendant's Massachusetts residential address as of June 5, 2006 ("Registration Form"). The Department also acquired a "Judgment and Probation/Commitment Order," dated April 21, 1982 and issued by the United States District Court for the District of Rhode Island (the "Order"). The Order indicates that Defendant had been convicted on said date of the offense of transporting and facilitating "the movement of women and minors in interstate commerce for the purpose of prostitution and conspiracy in violation of Title 18, United States Code, Section 2423(a)(1)(2)[2] and Title 18, United States Code, Section 371."
Based on the investigation and information obtained by the Providence Police Department, Defendant was charged with failing to register as a sex offender in violation *Page 3 
of §§ 11-37.1-3 and 11-37.1-4, having been convicted of an offense that requires registration. On September 10, 2009, Defendant filed a motion to dismiss pursuant to Rule 9.1, arguing that Defendant's 1982 Mann Act conviction does not subject him to the registration requirements of Rhode Island's Sexual Offender Registration and Community Notification Act. G.L. 1956 § 11-37.1-1 et seq. The State of Rhode Island (the "State") objects and asserts that Defendant's prior conviction triggers registration obligations under the Registration Act.
 ANALYSIS
"When addressing a motion to dismiss a Criminal Information pursuant to Rule 9.1, a [Superior Court] justice is required to examine the Information and any attached exhibits to determine whether the State has satisfied its burden to establish probable cause to believe that the offense charged was committed and that the Defendant committed it." State v. Martini,860 A.2d 689, 691 (R.I. 2004) (quoting State v. Fritz,801 A.2d 679, 682 (R.I. 2002)) (citing State v. Aponte,649 A.2d 219, 222 (R.I. 1994) and G.L. 1956 § 12-12-1.7; Rule 9.1). "The probable cause standard applied to a Motion to Dismiss is the same as the one that is applied to determine the propriety of an arrest." State v. Reed, 764 A.2d 144, 146 (R.I. 2001) (citingAponte, 649 A.2d at 222). "Probable cause to arrest exists when the facts and circumstances within the police officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a reasonable person's belief that a crime has been committed and that the person to be arrested has committed the crime." Id. (citing State v. Jenison,442 A.2d 866, 873-74 (R.I. 1982)). *Page 4 
It is well settled that when the language of a statute is clear and unambiguous, the court must interpret the statute literally and must give the words of the statute their plain and ordinary meanings. Martini, 860 A.2d at 691 (citing State v.DiCicco, 707 A.2d 251, 253 (R.I. 1998)). When the meaning of a criminal statute is ambiguous, however, the statute must be strictly construed in favor of the party upon whom a penalty is to be imposed. State v. Oliveira, 882 A.2d 1097, 1110 (R.I. 2005) (citing State v. Smith, 766 A.2d 913, 924 (R.I. 2001)) (quoting State v. Bryant, 670 A.2d 776, 779 (R.I. 1996)). The defendant must "be given the benefit of any reasonable doubt as to whether the act charged is within the meaning of [a penal] statute."Oliveira, 882 A.2d at 1110 (citing State v. DelBonis,862 A.2d 760, 766 (R.I. 2004)) (quoting State v. Amaro,448 A.2d 1257, 1259 (R.I. 1982)). Nevertheless, this Court "will not impose a straitjacket upon the statutory language if to do so would thwart a clear legislative intent." State v. Dussault,121 R.I. 751, 753-54, 403 A.2d 244, 246 (1979) (citingDeFusco v. Brophy,112 R.I. 461, 464, 311 A.2d 286, 288 (1973); State v. Milne,95 R.I. 315, 320, 187 A.2d 136, 139 (1962)).
"[T]he primary object of the [C]ourt is to ascertain the legislative intention from a consideration of the legislation in its entirety, viewing the language used therein in the light, nature, and purpose of the enactment thereof." Smith,766 A.2d at 924 (quoting Mason v. Bowerman Bros., Inc.,95 R.I. 425, 431, 187 A.2d 772, 776 (1963) (citations omitted)). In so construing the statute at issue, this Court is adhering to the "fairest and most rational method" of interpreting laws as set forth by Sir William Blackstone in his Commentaries of 1758. In reAdvisory to the Governor (Judicial Nominating Comm'n),668 A.2d 1246, 1248-49 (R.I. 1996); 1 Sharswood's Blackstone's Commentaries, Laws of *Page 5 England 58 (1860). Blackstone described five "signs" that constitute "the most natural and probable" guides to the will of a legislature and are revealed by means of:
 "[w]ords . . . understood in their usual and most known signification [and in] their general and popular use. . . . If words happen to be still dubious, we may establish their meaning from the context. . . . As to the subject matter, words are always to be understood as having a regard thereto . . . [with] expressions directed to that end. . . . As to the effects and consequence, the rule is, that where words bear either none, or a very absurd signification, if literally understood, we must a little deviate from the received sense of them. . . . But, lastly, the most universal and effectual way of discovering the true meaning of a law . . . is by considering the reason and spirit of it." Commentaries, at 58-60; In re Advisory, 668 A.2d at 1249.
In interpreting a legislative enactment, it is incumbent upon the Court "to determine and effectuate the Legislature's intent and to attribute to the enactment the meaning most consistent with its policies or obvious purposes." State v. Flores,714 A.2d 581, 583 (R.I. 1998) (quoting Brennan v. Kirby,529 A.2d 633, 637 (R.I. 1987)). In so doing, "[t]his Court will not construe a statute to reach an absurd result." Id. (quotingKaya v. Partington, 681 A.2d 256, 261 (R.I. 1996)). Furthermore, an ambiguous statute should not be interpreted in a manner that will defeat its underlying purpose. See Town ofBurrillville v. Pascoag Apartment Associates, LLC.,950 A.2d 435 at 446 (R.I. 2008).
The registration of sex offenders in Rhode Island is governed by the Sexual Offender Registration and Community Notification Act (the "Registration Act"). G.L. 1956 § 11-37.1-1 et seq. Section 3(a) of the Act describes persons who must register as sex offenders, and reads as follows:
 Registration required — Persons covered.
(a) Any person who, in this or any other jurisdiction: (1) has been convicted of a criminal offense against a victim who is a minor, (2) has been convicted of a sexually violent offense, (3) has been determined to be a sexually violent predator, (4) has committed an aggravated offense as defined in § 11-37.1-2, or (5) *Page 6 
is a recidivist, as defined in § 11-37.1-4, shall be required to register his or her current address with the local law enforcement agency having jurisdiction over the city or town in which the person having the duty to register resides for the time period specified in § 11-37.1-4.
Subsection (d), added in 2006, addresses the registration of sex offenders who move to Rhode Island from another state:
 (d) If a person is registered as a sex offender in another state for an offense which, if committed within the jurisdiction of this state, would require the person to register as a sex offender, then that person, upon moving to or returning to this state, shall register as a sex offender in the same manner as if the offense were committed within Rhode Island. § 11-37.1-3(d).
The language of § 11-37.1-3(d) indicates that a person's sex offender status in another jurisdiction does not automatically trigger registration requirements in Rhode Island. Such obligations are imposed if a person is registered in another state "for an offense which, if committed within the jurisdiction of thisstate, would require the person to register as a sex offender." § 11-37.1-3(d) (emphasis added). Thus, in order to be subject to registration requirements in Rhode Island, a registered sex offender moving to our State must come within the "persons covered" under Subsection (a) above. § 11-37.1-3(a).
Section 11-37.1-3(a) designates five "categories" of persons required to register as sex offenders under the Registration Act. Of these five listed "categories," subsection (a)(1) — a person who, in this or any other jurisdiction has been convicted of a criminal offense against a victim who is a minor — is the most analogous to Defendant's Mann Act conviction[3] in the instant matter. Section 11-37.1-2(e) of the Registration Act defines *Page 7 
"criminal offense against a victim who is a minor" as "any of the following offenses or any offense in another jurisdiction which is substantially the equivalent of the following or for which the person is or would be required to register under 42 U.S.C. § 14071[4] or 18 U.S.C. § 4042(c):
 (1) Kidnapping or false imprisonment of a minor, in violation of § 11-26-1.4, 11-26-1 or 11-26-2, where the victim of the offense is sixteen (16) years of age or older and under the age of eighteen (18) years;
 (2) Enticement of a child in violation of § 11-26-1.5 with the intent to violate §§ 11-37-6, 11-37-8, 11-37-8.1, 11-37-8.3;
 (3) Any violation of § 11-37-6, 11-37-8, 11-37-8.1, or 11-37-8.3;
 (4) Any violation of § 11-1-10, where the underlying offense is a violation of chapter 34 of this title and the victim or person solicited to commit the offense is under the age of eighteen (18) years;
 (5) Any violation of § 11-9-1(b) or (c); or *Page 8 
 (6) Any violation of § 11-9-1.3;
 (7) Any violation of § 11-37.1-10;
 (8) Any violation of § 11-37-8.8;
 (9) Any violation of § 11-64-2 where the victim is under the age of eighteen (18) years; or
 (10) Murder in violation of § 11-23-1 where the murder was committed in the perpetration of, or attempted perpetration of, kidnapping and where the victim of the offense is under eighteen (18) years of age.
No Rhode Island case directly addresses whether a violation of the federal Mann Act constitutes a substantially equivalent offense to any of those listed under § 11-37.1-2(e). It appears that the most equivalent Rhode Island offense[5] would be a violation of G.L. 1956 § 11-37-8.8 — Indecent Solicitation of a Child, which reads:
 (a) A person is guilty of indecent solicitation of a child if he or she knowingly solicits another person under eighteen (18) years of age or one whom he or she believes is a person under eighteen (18) years of age for the purpose of engaging in an act of prostitution or in any act in violation of chapter 9, 34, or 37 of this title.
 (b) As used in this section, the word "solicit" or "solicitation" means to command, authorize, urge, incite, request, or advise another to perform an act by any means including, but not limited to, in person, over the phone, in writing, by computer, through the Internet, or by advertisement of any kind.
While the Rhode Island offense does not include a transportation element as that required for the Mann Act offense, both offenses are arguably similar in purpose and subject matter. Given the rationale of both offenses — to prevent the introduction of *Page 9 
minors into prostitution — this Court finds that the federal Mann Act offense should be considered "substantially the equivalent" of the Rhode Island offense and meets the definition of a "criminal offense against a victim who is a minor" under § 11-37.1-2(e).
Here, Defendant is a registered sex offender in Massachusetts for violating the federal Mann Act, an offense which if committed within the jurisdiction of this State requires a person to register as a sex offender under § 11-37.1-3(a)(1). However, whether the Defendant was required to register upon moving to or returning to Rhode Island pursuant to § 11-37.1-3(d) is not clear from the language of subsection (d) itself. Specifically, Defendant argues that his 1982 date of conviction falls outside of the time for which the State can require registration. Section 11-37.1-3(d) does not expressly designate a date upon which out-of-state convictions become too remote to trigger registration duties. Thus, this Court finds said provision of the Registration Act to be ambiguous in its applicability.
This Court examines statutory provisions in their entirety, attributing to the act the meaning most consistent with the policies and purposes of the Legislature. In reAdvisory, 668 A.2d at 1248 (citing Matter of Falstaff BrewingCorp., 637 A.2d 1047, 1049-50 (R.I. 1994)). Effective July 24, 1996, the Rhode Island General Assembly enacted the current Registration Act, and concurrently repealed the statute that previously governed the registration of sex offenders.State v. Germane 971 A.2d 555, 563 (R.I. 2009). The prior registration statute, enacted in 1992, obliged "[a]ny person who since July 1, 1992, has been, or shall hereafter be, convicted of any offense in violation of [any of the sexual assaults enumerated in chapter 37 of title 11 of the General Laws]" to register with the chief of police of the city or town in which the sex offender resided. *Page 10 
G.L. 1956 § 11-37-16 (since repealed). Thus, the prior statute by its own plain language did not apply retroactively. See State v.Santos, 870 A.2d 1029, 1033 (R.I. 2005).
The current Registration Act "contains sex offender-registration requirements that are significantly broader than those of the prior act and also includes community notification provisions modeled after Megan's Law."[6] Flores, 714 A.2d at 582. The new registration requirements took effect upon passage and apply to those persons convicted of an offense requiring registration . . . which was committed after the effective date [July 24, 1996] of the act. P.L. 1996, ch. 104, § 4. However, the Registration Act also includes a savings clause at § 11-37.1-18, which reads as follows:
 Continuation of the prior duty to register — Any person who pursuant to the provisions of former 11-37-16 had a duty to register under that section after having been convicted of any violation of the provisions of chapter 37 of this title, or for a conviction in another state of first degree sexual assault which if committed in this state would constitute a violation of chapter 37 of this title, shall have the duty to register in accordance with the provisions of this chapter. Nothing in this section shall be construed to abrogate any duty to register which exists or existed under the provisions of former § 11-37-16.
Pursuant to this provision, a person who committed an offense requiring registration while the former statute was still in effect, but was convicted after passage of the new Registration Act and the repeal of the former registration statute, is required to register as a sex offender pursuant to registration requirements in effect at time charged. § 11-37.1-18; § 11-37-16 (repealed); seeFlores, 714 A.2d at 583-84.
In opposing the instant motion, the State contends that Defendant is required to register pursuant to this savings clause. The State's argument, however, is misplaced. *Page 11 
The Rhode Island Supreme Court specifically held in Santos
that "§ 11-37-16(a) defines the universe of those who were, or are, under a legislatively imposed duty to register." 870 A.2d at 1033. "That universe has been clearly defined by the General Assembly in § 11-37-16(a) as consisting of "[a]ny person who since July 1, 1992, has been, or shall hereafter be, convicted of any offense in violation of this chapter, or convicted in another state of first degree sexual assault which if committed in this State would constitute a violation of this chapter. . . ."Id. at n. 6. Because Defendant's conviction occurred in 1982, he would not have been required to register under § 11-37-16, thus placing him outside of the reach of the savings clause of § 11-37.1-18.
Relying heavily on Santos, Defendant maintains that the retroactive application of the Registration Act to 1992 bars any obligation on his part to register in accordance with § 11-37.1-3(d) upon moving to or returning to Rhode Island. As discussed above, whether the timing of a conviction is considered in determining registration obligations under subsection (d) is unclear from language of the statute. The construction of the phrase "for an offense, which if committed within the jurisdiction of this state" is determinative; specifically, whether the legislature intended to use "an offense" in the general sense or in a manner specific to the offense of the individual.
"For purposes of judicial enforcement, the `policy' of a statute should be drawn out of its terms, as nourished by their proper environment, and not, like nitrogen, out of the air." State v.DiStefano, 764 A.2d 1156, 1185 (R.I. 2000) (1-2-2 decision) (Bourcier, J., dissenting) (quoting Kaya v. Partington,681 A.2d 256 (R.I. 1996) (Flanders, J. dissenting). "Our goal is to construe the statute as it is written and not to divine sound public policy out of legislative silence, references to imagined legislative intentions, or *Page 12 
our own predilections." Id. Here, the General Assembly was certainly not silent in its addition of § 11-37.1-3(d) to the Registration Act through the passage of Senate Bill 2443A/House Bill 6924Aam in 2006, subsequent to Santos. (See
Public Laws of 2006 Chapters 370 and 440 for the Senate and House Bills respectively.). The Legislative Council explained
 [t]his act would require persons to register as sexual offenders in the state of Rhode Island if they are adjudicated on an offense in another jurisdiction, which under Rhode Island law would otherwise require that person to register as a sexual offender if the offense had been committed in Rhode Island. Senate Bill No. 2443A, 2006 Gen. Assem., Reg. Sess. (R.I. 2006).
The Bill was passed by unanimous consent of the Senate only four months after introduction. Journal of the Senate, V.133 No. 53 (June 14, 2006). Moreover, proponents of the legislation[7] clearly expressed the intent of the General Assembly in enacting § 11-37.1-3(d):
 "This legislation protects communities and keeps residents informed of who their neighbors are," said Senator Felag (D-Dist. 8, Bristol, Tiverton, Warren), the Senate Bill's sponsor. "All too often, we hear stories about sex offenders who move from one state to another and-through some loophole in the system-are not required to register in their new state. If a sex offender has committed such a despicable act in another state, that stigma should be carried with the offender to Rhode Island. It's just plain dangerous to have unregistered sexual predators living in our communities, and this bill puts an end to that."
 "People have a right to know who is living in their community, and what type of people are coming into contact with their children and families on a regular basis," said Representative Loughlin (R-Dist. 71, Little *Page 13 
Compton, Portsmouth, Tiverton), the House Bill's sponsor. "By requiring individuals who have registered as sex offenders in other states to register as such in Rhode Island, we protect every resident of our state from having an unregistered sex offender move into their neighborhood unnoticed. This legislation is long overdue." Press Release, Rhode Island General Assembly, Assembly Passes Sex Offender Legislation (June, 23, 2006).
In light of the legislative history behind the enactment of § 11-37.1-3(d), this Court is satisfied that the legislature did not intend to include a timing element in the determination of offenses requiring registration pursuant to the subsection at issue. If subsection (d) is construed to include a "cut-off" date for convictions, sex offenders registered in other jurisdictions for convictions prior to 1992 could move or return to Rhode Island unnoticed. This resulting "loophole" starkly contradicts the "reason and spirit" of § 11-37.1-3(d) and is inconsistent with the "policies and obvious purpose" of the statute.Commentaries, at 58-60; Flores, 714 A.2d at 583. Furthermore, a court may not arbitrarily extend the ordinary meaning of statutory language. See Castelli v. Carcieri,961 A.2d 277, 284 (R.I. 2008) (citing Carlson v. McLyman,77 R.I. 177, at 180, 74 A.2d at 855 (1950)). It is not within the province of a court to insert or delete words from a statute unless the necessity to do so is plainly evident in order to carry out the legislative intent. Castelli, 961 A.2d at 284, (citingCarlson, and also State v. Santos.).
In light of the foregoing findings and analysis, the Court cannot say that the State has failed to satisfy its burden to establish probable cause to believe that the offense charged was committed and that the Defendant committed it. To the contrary, it appears that there are facts and circumstances within the knowledge of the police, and reasonably trustworthy information known to the police which are sufficient to warrant a reasonable person's belief that a crime has been committed and that the person arrested has committed the crime. *Page 14 
 CONCLUSION
The Court finds probable cause exists to believe Defendant was required to register as a sex offender with the Providence Police Department upon moving to or returning to Rhode Island in 2008 in accordance with § 11-37.1-3(d). That is the standard this Court must apply in analyzing a Rule 9.1 motion. Based on the above reasoning, this Court denies Defendant, Wayne Morris' Rule 9.1 motion to dismiss. Counsel shall prepare and submit an appropriate Order for entry in accordance with this Decision.
[1] Rule 9.1 reads as follows:
 A defendant who has been charged by information may, within thirty (30) days after he or she has been served with a copy of the information, or at such later time as the court may permit, move to dismiss on the ground that the information and exhibits appended thereto do not demonstrate the existence of probable cause to believe that the offense charged has been committed or that the defendant committed it. The motion shall be scheduled to be heard within a reasonable time.
[2] 18 U.S.C. § 2423 is commonly referred to as the federal "Mann Act" and has since been amended. Defendant's violation of this statute will hereinafter be referred to as his "Mann Act conviction."
[3] Title 18 U.S.C. § 2423 (a) presently reads:
 (a) Transportation with intent to engage in criminal sexual activity — A person who knowingly transports an individual who has not attained the age of 18 years in interstate or foreign commerce, or in any commonwealth, territory or possession of the United States, with intent that the individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, shall be fined under this title and imprisoned not less than 10 years or for life.
[4] 42 U.S.C. § 14071 is the Jacob Wetterling Crimes Against Children and Sexually Violent Offender Registration Program, which mandates state registration of sex offenders according to its guidelines. This federal statute defines "criminal offense against a victim who is a minor" as any criminal offense in a range of offenses specified by State law which is comparable to or which exceeds the following range of offenses:
(i) kidnapping of a minor, except by a parent; (ii) false imprisonment of a minor, except by a parent; (iii) criminal sexual conduct toward a minor; (iv) solicitation of a minor to engage in sexual conduct; (v) use of a minor in a sexual performance; (vi) solicitation of a minor to practice prostitution; (vii) any conduct that by its nature is a sexual offense against a minor;
(viii) production or distribution of child pornography, as described in section 2251, 2252, or 2252A of Title 18; or (ix) an attempt to commit an offense described in any of clauses (i) through (vii), if the State —
 (I) makes such an attempt a criminal offense; and
 (II) chooses to include such an offense in those which are criminal offenses against a victim who is a minor for the purposes of this section.
[5] A violation of the federal Mann Act is also similar to an offense under G.L. 1956 § 11-9-1(c), which reads:
 Every person who shall exhibit, use, employ or shall in any manner or under pretense so exhibit, use, or employ any child under the age of eighteen (18) years to any person for the purpose of prostitution or for any other lewd or indecent act shall be imprisoned not exceeding twenty (20) years, or be fined not exceeding twenty thousand dollars ($20,000), or both.
[6] Such community notification laws are named after Megan Kanka, the seven-year-old victim of a sexual assault and murder in New Jersey in 1994. Flores, 714 A.2d at 582 n. 2 (citingDoe v. Pataki, 120 F.3d 1263, 1265 n. 1 (2d Cir. 1997), cert. denied,522 U.S. 1122, 118 S.Ct. 1066, 140 L.Ed.2d 126 (1998)).
[7] "Mindful that "statements by individual legislators or framers are not to be given talismanic significance," Bandoni v.State, 715 A.2d 580, 592 (R.I. 1998), this Court still recognizes that "courts give consideration to statements made by a bill's sponsor." Lynch v. Norwood Autoplex, No. PC05-4125, 2006 WL 2243018 (R.I. Super. Ct. July 25, 2006) (quoting Singer, Sutherland StatutoryConstruction, § 48:15 at 475 (2000)). Such consideration is given because "legislators look to the sponsor . . . to be particularly well informed about its purpose, meaning, and intended effect."Id. (quoting Sutherland, § 48:15 at 475). The United State Supreme Court has similarly noted that it "is the sponsors that we look to when the meaning of the statutory words is in doubt."National Woodwork Mfrs. Ass'n. v. NLRB,386 U.S. 612, 640 (1967)).