July 18, 2025

RH McLeod Family LLC et al.    :        No. 2023-104-M.P.
                                         (WC 21-495)

             v.            :

Westerly Zoning Board of Review et al.  :

4 Spray Rock, LLC         :         No. 2023-117-M.P.
                                         (WC 21-497)

             v.            :

Westerly Zoning Board of Review et al.  :

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

RH McLeod Family LLC et al.    :          No. 2023-104-M.P.
                                            (WC 21-495)

            v.             :

Westerly Zoning Board of Review et al.  :

4 Spray Rock, LLC             :          No. 2023-117-M.P.
                                            (WC 21-497)

            v.             :

Westerly Zoning Board of Review et al.  :

Present: Suttell, C.J., Goldberg, Lynch Prata, and Long, JJ.

# O P I N I O N

**Chief Justice Suttell, for the Court.** In these consolidated cases, this Court issued writs of certiorari to review a Superior Court judgment affirming a decision by the Westerly Zoning Board of Review. The zoning board granted a dimensional variance to the respondents, Todd Nordstrom and Karyn Nordstrom (the Nordstroms), enabling them to demolish the existing house on the property and build a new three-story house. Before this Court, the petitioners, RH McLeod Family LLC and Margot Perot (collectively, RH McLeod) and 4 Spray Rock, LLC (4 Spray Rock), submit that the trial justice erred in affirming the decision of the zoning board. For the reasons set forth herein, we quash the judgment of the Superior Court.

- 1 -

# I

## Facts and Travel[1]

The Nordstroms submitted an application for a dimensional variance to the Westerly Zoning Board of Review (the board) on April 15, 2021, for their property located at 2 Spray Rock Road in Westerly, Rhode Island (the property). The property is a preexisting nonconforming lot of 11,750 square feet, with approximately sixty feet of frontage. It is located in a Medium-Density Residential 30 (MDR-30) district, which requires a minimum lot size of 30,000 square feet and 120 feet of frontage for a single-family residence. The nonconforming house on the lot was built in 1957 and is a three-bedroom, two-bathroom, one-story house of 1,741 square feet. It exceeds the maximum impervious surface coverage under the zoning ordinance and also is not compliant with side yard and rear yard setbacks. The house is situated on its rear yard property line, as it is connected to a garage/barn located on another lot at 112 Noyes Neck Road.

---

[1] At the outset, we note that, although new zoning statutes have gone into effect since the time the Nordstroms filed their application for a dimensional variance, "[f]or this Court to interpret a statute as retroactive, the General Assembly must make a clear expression of retroactive application." *East Bay Community Development Corporation v. Zoning Board of Review of Town of Barrington*, 901 A.2d 1136, 1144 (R.I. 2006). Our review of the relevant amendments to the Zoning Enabling Act reveals that they were specifically made effective on January 1, 2024 (P.L. 2023, ch. 304, § 2); therefore, we apply "the law in effect at the time when the applicant[] submitted its application for a permit to the zoning board." *Id.*

Accordingly, we utilize the public laws in citing to the relevant statutes throughout this opinion.

The Nordstroms purchased the property at 2 Spray Rock Road in 2020 and filed an application to demolish the existing house on the lot and build a new three-story house situated in the center of the lot. The footprint of the proposed building would be "less nonconforming" at approximately 1,597 square feet. Also, locating the new house in the center of the lot would make it conforming with rear-yard setback requirements. In their application, the Nordstroms requested a dimensional variance of five feet for the right-side yard setback and five feet for the left-side yard setback. Neighboring landowners filed objections to the Nordstroms' application.[2]

The board held a hearing on the Nordstroms' application on September 1, 2021, at which it heard testimony from Todd Nordstrom; James Houle, a real estate expert presented by the Nordstroms; and Stephen Fennell, the architect for the proposed home. In opposition to the application, 4 Spray Rock presented Christopher Arner as an expert in architecture and RH McLeod presented Douglas McLeod, who owned neighboring property and expressed concerns about the size of the proposed house.

---

[2] RH McLeod and Perot each own 50 percent of real property located at 75 and 79 Meadow Avenue neighboring the Nordstroms' property. 4 Spray Rock owns real property located at 4 Spray Rock Road, adjacent to the Nordstroms' property. They all raised objections with the zoning board.

On October 6, 2021, the board voted 4 to 1 to approve the Nordstroms' application to raze the existing house and replace it with a house requiring side yard variances of five feet each. The approval also included certain conditions concerning the porch for the house and the doors and bulkhead on the west side of the house. The plans would be amended to reflect these conditions.

In a written decision issued on October 14, 2021, the board indicated that it was accepting the objectors' argument that the Nordstroms were required to prove that there was "no other reasonable alternative to enjoy a legally permitted beneficial use [for the property] absent [the dimensional variance] relief." The board also decided that § 260-32(C)(2) of the Westerly Zoning Ordinance did not prohibit the Nordstroms from demolishing the existing house and then obtaining a dimensional variance for a new house. The board indicated that the substandard size of the lot required the Nordstroms to seek the dimensional variances and that the hardship was not created by the Nordstroms, as they had no role in subdividing the original parcel and joining the barn on the adjacent lot to their house. Based on the expert opinions of Houle and Fennell and its own knowledge of the area, the board found "that the proposed home is within the character of the community * * *."

The board further found that granting the dimensional variances constituted the least relief necessary. The board noted that Houle "testified that the proposed home is within the size of the average American home for new construction" and

that Fennell "explained that the room sizes were customary" and that "making the rooms narrower would reduce their efficiency and usability." The board also pointed out that even Arner indicated that the room sizes were reasonable. The board noted that the relief sought was such an insignificant amount that it could have been approved through "the Dimensional Modification process, § 260-30."

In addition, the board found that the hardship suffered by the Nordstroms would amount to more than a mere inconvenience if dimensional relief were not granted. Applying the higher hardship standard, the board concluded that there were no other reasonable alternatives for the Nordstroms to enjoy their legally permitted use. In support, the board pointed to the fact that renovation of the home is not a reasonable alternative because of the existing home being connected to a barn located in another lot. The board further indicated that the proposed house would be less nonconforming than the current house and that the objectors' alternatives to the Nordstroms' plan were not reasonable. Ultimately, the board granted the Nordstroms' application for a dimensional variance with conditions.

On November 2, 2021, RH McLeod filed a zoning appeal in the Superior Court asserting that the board did not follow the correct legal standard in approving the dimensional variance and violated the zoning ordinance in permitting the Nordstroms to build a new nonconforming house after allowing them to demolish a nonconforming house. 4 Spray Rock also filed its zoning appeal in the Superior

- 5 -

Court on November 2, 2021, arguing that the board's decision was unlawful. The Superior Court consolidated those appeals.[3]

After the parties submitted memoranda, a justice of the Superior Court issued a written decision on March 9, 2023. The trial justice began her analysis by addressing the appropriate hardship standard. In so doing, she addressed petitioners' argument that *New Castle Realty Company v. Dreczko*, 248 A.3d 638 (R.I. 2021), overruled *Lischio v. Zoning Board of Review of Town of North Kingstown*, 818 A.2d 685 (R.I. 2003), and, therefore, "an applicant for dimensional relief must prove 'that there is no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property unless granted the requested relief from the dimensional regulations.'" Citing her decision in the separate case of *Watch Hill Fire District v. Westerly Zoning Board of Review*, she disagreed with the contention that *New Castle* overruled *Lischio* and instead indicated that the two cases and statutory sections can be reconciled and that both standards apply to an application for a dimensional variance. Applying her reasoning in *Watch Hill Fire District*, she explained that "a fair reading of *New Castle* leads to the conclusion that a petitioner must consider 'reasonable alternatives' to satisfy the [G.L. 1956] § 45-24-41(d)(4)[, as amended

---

[3] We note that Paul G. McDermott and Carol McDermott also filed a zoning appeal (WC 21-496) which was consolidated with petitioners' case in the Superior Court. The McDermotts, however, did not file a petition for the issuance of a writ of certiorari to review the Superior Court's decision.

- 6 -

by P.L. 2016, ch. 527, § 4] 'least relief necessary' requirement for a dimensional variance." Therefore, she noted that,

> "[a]lthough the *New Castle* Court stated the § 45-24-31(66)(ii)[, as amended by P.L. 2019, ch. 267, § 1] definitional language in full, the Court's discussion of a 'reasonable alternative' did not otherwise rely on the second half of the definitional clause pertaining to whether the applicant could enjoy a 'legally permitted beneficial use of the subject property.' * * * As a result, Appellants read too much into the *New Castle* Court's invocation of § 45-24-31(66)(ii). * * * *New Castle*, *Lischio*, § 45 24 31(66)(ii)[, as amended by P.L. 2019, ch. 267, § 1], and § 45-24-41[, as amended by P.L. 2016, ch. 527, § 4] can be reconciled without impermissibly undertak[ing] the correction of legislative mistakes." (Internal quotation marks omitted.)

The trial justice then turned to whether the Nordstroms experienced a hardship amounting to more than a mere inconvenience. Citing the narrow lot and the fact that their current house is situated on the rear lot line attached to a barn located on an adjacent lot, the trial justice determined that the Nordstroms experienced a "hardship amounting to more than a mere inconvenience."

The trial justice also agreed with the board that the Nordstroms' proposal represented the least relief necessary to ameliorate their hardships. She noted that renovating the existing house would not address the fact that the house is located on its rear lot. She also indicated that narrowing the width of the proposed new home would not be a reasonable alternative in light of the evidence before the board. She reasoned that the evidence indicated that a narrower design would not match the

- 7 -

character of the area and would require special design and materials. Therefore, as to the least relief necessary, the trial justice determined that there was substantial evidence to support the determination that the alternatives presented by petitioners "were not reasonable in their design or would involve more severe nonconformities than the requested five-foot side-yard variances."

The trial justice then addressed the parties' arguments as to § 260-32(C)(2) of the Westerly Zoning Ordinance, which provides:

> "Destruction or demolition. A nonconforming structure which is destroyed or damaged by any means which is beyond the control of the owner shall be rebuilt or restored within one year, or thereafter conform to the dimensional provisions of this Zoning Ordinance. If a nonconforming building or structure is demolished or removed by or for its owner, it shall not be rebuilt or replaced except in conformity with the dimensional requirements of this Zoning Ordinance."

The petitioners argued that the Nordstroms' proposal should not have been approved because the Nordstroms were prohibited from building a new nonconforming house under ordinance § 260-32(C)(2). The trial justice, however, agreed with the board that the ordinance still allowed for the possibility of the Nordstroms obtaining a dimensional variance to build a new nonconforming structure. She indicated that conformity with the dimensional requirements would also include obtaining approval for a dimensional variance.

The trial justice ultimately concluded that the board applied the correct legal standard to the Nordstroms' application for a dimensional variance and that the board's decision was supported by substantial evidence in the record. Accordingly, she affirmed the board's decision.

Judgment to that effect entered on March 21, 2023. RH McLeod filed a petition for a writ of certiorari on March 27, 2023. 4 Spray Rock filed a petition for a writ of certiorari on April 5, 2023. This Court granted the petitions for writs of certiorari and consolidated the two cases on September 28, 2023.

**II**

**Standard of Review**

"On a petition for certiorari from a Superior Court judgment that has entered after an appeal from a municipal zoning board's decision, we confine our review to a determination of whether the trial justice acted within his or her authority as set forth in G.L. 1956 § 45-24-69." *Freepoint Solar LLC v. Richmond Zoning Board of Review*, 274 A.3d 1, 5 (R.I. 2022) (brackets omitted) (quoting *New Castle Realty Company v. Dreczko*, 248 A.3d 638, 642 (R.I. 2021)). "Section 45-24-69(d), in turn, provides that the Superior Court 'shall not substitute its judgment for that of the zoning board of review as to the weight of the evidence on questions of fact' but may 'reverse or modify the decision if substantial rights of the appellant have been prejudiced' by a decision that, among other things, is 'affected by error of law' or is

- 9 -

'clearly erroneous in view of the reliable, probative, and substantial evidence of the whole record.'" *Id.* at 6 (brackets and deletion omitted) (quoting § 45-24-69(d)(4), (5)).

"We do not reverse a Superior Court justice's decision unless it can be shown that the justice misapplied the law, misconceived or overlooked material evidence, or made findings that were clearly wrong." *Freepoint Solar LLC*, 274 A.3d at 6 (quoting *New Castle*, 248 A.3d at 643). "In this Court's *de novo* review, a zoning board's determinations of law, like those of an administrative agency, are not binding on the reviewing court; they may be reviewed to determine what the law is and its applicability to the facts." *Id.* (quoting *Pawtucket Transfer Operations, LLC v. City of Pawtucket*, 944 A.2d 855, 859 (R.I. 2008)).

## III

## Discussion

Before this Court, petitioners argue that (1) the Nordstroms failed to establish that they have "no other reasonable alternative way to enjoy a legally permitted beneficial use of the subject property"[4] and that (2) "the plain language of § 260-32(C)(2) of the [o]rdinance precludes an owner from voluntarily demolishing a nonconforming structure and building a new structure that does not meet the

---

[4] This question of law was resolved in the separate but related case of *Watch Hill Fire District v. Westerly Zoning Board of Review*, No. 2022-327-M.P., and it is not necessary for us to restate the resolution here.

requirements of the [o]rdinance." 4 Spray Rock additionally argues that the trial justice "failed to properly apply the standards for a dimensional variance and, in particular, failed to hold the Nordstroms to their burden to demonstrate that the relief sought is the 'least relief necessary' pursuant to § 260-33(D)(4) of the Code of Ordinances of the Town of Westerly * * *."

We are of the opinion that the trial justice misconstrued § 260-32(C)(2) when she determined that the ordinance allowed the Nordstroms to obtain a dimensional variance to demolish the current structure and to build a new nonconforming structure. Section 260-32(C)(2) provides:

> "Destruction or demolition. A nonconforming structure which is destroyed or damaged by any means which is beyond the control of the owner shall be rebuilt or restored within one year, or thereafter conform to the dimensional provisions of this Zoning Ordinance. *If a nonconforming building or structure is demolished or removed by or for its owner, it shall not be rebuilt or replaced except in conformity with the dimensional requirements of this Zoning Ordinance*." (Emphasis added.)

"When interpreting an ordinance, we employ the same rules of construction that we apply when interpreting statutes." *Freepoint Solar LLC*, 274 A.3d at 6 (quoting *Ryan v. City of Providence*, 11 A.3d 68, 70 (R.I. 2011)). "When the language of a statute or a zoning ordinance is clear and certain, there is nothing left for interpretation and the ordinance must be interpreted literally." *Cohen v. Duncan*, 970 A.2d 550, 562 (R.I. 2009) (brackets omitted) (quoting *Mongony v. Bevilacqua*,

- 11 -

432 A.2d 661, 663 (R.I. 1981)). It is also true that "we must presume that the drafters intended every word of the ordinance to have a useful purpose and to have some force and effect." *Id.* (quoting *Ruggiero v. City of Providence*, 893 A.2d 235, 238 (R.I. 2006)). "[N]o construction of a statute should be adopted that would demote any significant phrase or clause to mere surplusage." *In re Harrison*, 992 A.2d 990, 994 (R.I. 2010) (quoting *State v. Clark*, 974 A.2d 558, 572 (R.I. 2009)).

The plain language of § 260-32(C)(2) is clear: A nonconforming building or structure cannot be demolished and rebuilt by or for its owner *unless* it is "in conformity with the dimensional requirements of this Zoning Ordinance." The same section of the ordinance carves out only *one* exception to this requirement: damage or destruction "*beyond the control of the owner*," and then only for a one-year period. Section 260-32(C)(2) (emphasis added). "It is axiomatic that 'where there is no ambiguity, this Court is not privileged to legislate, by inclusion, words which are not found in the statute [or ordinance].'" *Olamuyiwa v. Zebra Atlantek, Inc.*, 45 A.3d 527, 536 (R.I. 2012) (brackets omitted) (quoting *Wayne Distributing Co. v. Rhode Island Commission for Human Rights*, 673 A.2d 457, 460 (R.I. 1996)). If the town desired to create an additional exception to § 260-32(C)(2), such as obtaining a dimensional variance, "we do not doubt that it could have done so; but the blunt fact is that it did not do so." *Id.*

- 12 -

Furthermore, the inclusion of the language "in conformity with the *dimensional requirements* of this Zoning Ordinance[,]" § 260-32(C)(2) (emphasis added), signifies the unremarkable proposition that nonconformances—whether they be nonconforming uses or nonconforming structures—are disfavored as they are contrary to the overall purpose of a zoning scheme. *Cf. Town of Richmond v. Wawaloam Reservation, Inc.*, 850 A.2d 924, 934-35 (R.I. 2004); § 45-24-40(B), as enacted by P.L. 1991, ch. 307, § 1 (entitled "General provisions—Alteration of nonconforming development") ("The ordinance may require that such alteration shall more closely adhere to the intent and purposes of the zoning ordinance."). We reject the notion that § 260-32(C)(2) should be read such that "conformity with the dimensional requirements" would include the possibility of obtaining a dimensional variance. "This argument ignores longstanding precedent that, when faced with an otherwise plain and unambiguous ordinance, this Court will not seek out ambiguity where none otherwise exists." *Freepoint Solar LLC*, 274 A.3d at 7. We also note that the definition of the term "dimensional variance," which is controlling on all local ordinances, is "[p]ermission to depart from the dimensional requirements of a zoning ordinance * * *." Section 45-24-31(66)(ii), as amended by P.L. 2019, ch. 267, § 1. Thus, the Westerly Ordinance contemplates conformance with its dimensional requirements, not a departure therefrom.

Although we have said that "'some deference should be paid' to the 'interpretation placed on an ordinance by the municipal official responsible for enforcing it[,]' * * * in no case may blind deference be paid to the construction given by any official, agency, or board, as 'this Court is the final arbiter with respect to questions of * * * construction.'" *City of Woonsocket v. RISE Prep Mayoral Academy*, 251 A.3d 495, 502 (R.I. 2021) (quoting *New England Expedition-Providence, LLC v. City of Providence*, 773 A.2d 259, 263 (R.I. 2001)). Here, we disagree with the interpretation of the board and the trial justice because we are of the opinion that the plain language of § 260-32(C)(2) prevents the Nordstroms from obtaining dimensional variances if they should demolish the existing nonconforming structure.

The second sentence of § 260-32(C)(2) speaks to a very limited and specific audience: property owners who voluntarily seek to demolish a nonconforming structure and replace it with another structure. We think the language of the ordinance is very clear that, to do so, they must adhere to the dimensional requirements of the ordinance. To interpret the sentence as allowing such owners the ability to apply for dimensional variances would render said sentence as mere surplusage.

- 14 -

Accordingly, we hold that the trial justice erred in affirming the decision of the board.[5]

## IV

## Conclusion

For the reasons set forth herein, we quash the judgment of the Superior Court. The record shall be returned to the Superior Court with our decision endorsed thereon.

Justice Robinson did not participate.

---

[5] Because we quash the judgment on these grounds, we need not reach 4 Spray Rock's argument as to whether the Nordstroms met their burden in demonstrating that the relief sought is the "least relief necessary."

# STATE OF RHODE ISLAND

## SUPREME COURT – CLERK'S OFFICE

Licht Judicial Complex
250 Benefit Street
Providence, RI 02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | RH McLeod Family LLC et al. v. Westerly Zoning Board of Review et al.<br><br>4 Spray Rock, LLC v. Westerly Zoning Board of Review et al. |
| **Case Number** | No. 2023-104-M.P. (WC 21-495)<br>No. 2023-117-M.P. (WC 21-497) |
| **Date Opinion Filed** | July 18, 2025 |
| **Justices** | Suttell, C.J., Goldberg, Lynch Prata, and Long, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Washington County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Sarah Taft-Carter |
| **Attorney(s) on Appeal** | For Petitioners:<br><br>Gerald J. Petros, Esq.<br>Stephen J. MacGillivray, Esq. |
| | For Respondents:<br><br>Scott D. Levesque, Esq.<br>Kelly M. Fracassa, Esq. |